UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| RICKEY A. BEAVER,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>JUDY HOBDY, *et al.*,<br><br>　　　　Defendants. | CASE NO. C05-210JCC<br><br>REPORT AND RECOMMENDATION |

INTRODUCTION AND SUMMARY CONCLUSION

　　　Plaintiff is a state prisoner who is currently confined at the Western State Hospital at Steilacoom, Washington. He brings this action under 42 U.S.C. § 1983 seeking monetary damages for alleged violations of his constitutional rights during his incarceration at the King County Regional Justice Center ("RJC"). Plaintiff names the following King County employees as defendants in this action: Judy Hobdy, Assistant Personal Health Service Supervisor; Debbie Nanson, Personal Health Services Supervisor; Katherine Jones, Corrections Sergeant; Ron Kintner, Corrections Program Specialist; and, Susan Belt, Corrections Program Supervisor for Classification.

REPORT AND RECOMMENDATION
PAGE - 1

1    Plaintiff now moves for summary judgment. Defendants oppose plaintiff's motion. Following
2 a careful review of plaintiff's motion, defendants' response thereto, and the balance of the record, this
3 Court concludes that plaintiff's motion for summary judgment should be denied.

## FACTS

5    Plaintiff was booked into the RJC on August 27, 2004. (Dkt. No. 16 at 3; Dkt. No. 44 at 2.)
6 Plaintiff was seen by a registered nurse the following day for evaluation of physical injuries plaintiff
7 had when he was booked into the jail. (*Id.*) Plaintiff advised the nurse at that time about his mental
8 health condition. (*Id.*) Plaintiff also advised the nurse that he had previously been prescribed both
9 Zoloft and Trazadone as a part of a mental health treatment plan. (*See id.*)

10    Plaintiff contends that even after advising the nurse of his mental health condition at the time of
11 his booking, he was not seen by a jail psychiatrist, and did not receive the medications he required,
12 until September 30, 2004. (Dkt. No. 16 at 3.) However, documents submitted by defendants in
13 opposition to plaintiff's summary judgment motion establish that plaintiff was seen by psychiatrist
14 David Kersey, M.D., on September 3, 2004, and that Dr. Kersey prescribed Zoloft and Trazadone for
15 plaintiff at that time. (Dkt. No. 44, Attachment A.) The documents submitted by defendants further
16 establish that plaintiff began taking the Trazadone on September 4, 2004, and that he began taking the
17 Zoloft on September 5, 2004. (*Id.*, Attachment B.)

18    Plaintiff states that on approximately October 15, 2004, he began experiencing agitation and
19 anxiety and that he began seeing shadows and hearing voices. (Dkt. No. 16 at 3.) Plaintiff asserts that
20 he sent a kite to medical at about that time requesting to be seen by the psychiatric department, but
21 that he received no response back to the kite. (*Id.*) Plaintiff asserts that he thereafter spoke to a nurse
22 who advised him to file a grievance with defendant Hobdy. (*Id.*) The record appears to indicate that
23 defendant Hobdy received plaintiff's grievance on November 12, 2004, and that she sent

REPORT AND RECOMMENDATION
PAGE - 2

1   a response to plaintiff on November 16, 2004, indicating that she had made an appointment for him at
2   the psychiatric clinic. (Dkt. No. 16 at 13.)

3       On the morning of November 22, 2004, plaintiff was transported to the King County
4   Correctional Facility ("KCCF") in Seattle for his scheduled appointment. (Dkt. No. 16 at 5; Dkt. No.
5   44 at 3.) However, plaintiff was not seen on that date, apparently because of an administrative error,
6   and he was transported back to the RJC later that afternoon. (*Id.*) On November 23, 2004, plaintiff
7   was sent a memo by psychiatric services apologizing for the confusion regarding his previous clinic
8   visit and advising him that an appointment with the psychiatrist had been scheduled for November 30,
9   at KCCF. (Dkt. No. 16 at 14.) On November 30, 2004, plaintiff was once again transported to
10  KCCF and, once again, the appointment did not take place. (Dkt. No. 16 at 5; Dkt. No. 44 at 3.)
11  Upon returning to the RJC, plaintiff filed a grievance with defendant Nanson. (Dkt. No. 16 at 22.) It
12  appears that a response to that grievance was sent to plaintiff on December 6, 2004, advising that
13  plaintiff would be seen by a psychiatrist at the RJC at an undisclosed date and time. (*Id.*)

14      On December 10, 2004, while still waiting to be seen by the psychiatric department, plaintiff
15  was moved to a different housing unit, apparently because of population changes at the RJC. (*See*
16  Dkt. No. 45, Attachment A at 2.) Plaintiff asserts that after being moved to the new unit, he
17  experienced a panic attack with auditory and visual hallucinations. (Dkt. No. 16 at 6.) Plaintiff
18  refused to allow the corrections officer to close his door and, as a result of plaintiff's refusal to "rack
19  back," a code blue emergency was called by the corrections officer. (Dkt. No. 46, Attachment A.)
20  Plaintiff was thereafter handcuffed and transported to pre-disciplinary housing. (Dkt. No. 45 at 2.)

21      During the course of his transport to pre-disciplinary housing, plaintiff contends that he began
22  to experience chest pain, which caused him to slow his pace, and that he then began to sob
23  uncontrollably. (Dkt. No. 16 at 7.) Plaintiff asserts that defendant Jones told him to "shut up" and
24  threatened to pepper spray him. (*Id.*) Plaintiff then told defendant Jones that he would sue her for

25
26  REPORT AND RECOMMENDATION
    PAGE - 3

1  excessive and unnecessary use of force if he was pepper sprayed.  (*Id*.)  Plaintiff contends that as soon

2  as he threatened to sue defendant Jones, she had the escorting officers push plaintiff against the wall

3  and that she then pepper sprayed him in the face.  (Dkt. No. 16 at 7-8.)

4          Defendant Jones' version of these events differs slightly from plaintiff's.  Defendant Jones

5  states that while plaintiff was being transported to pre-disciplinary housing, he clenched his fists and

6  attempted to resist.  (Dkt. No. 45 at 2.)  One of the escorting officers, Officer Fiechtner, asked

7  plaintiff on two occasions if he was alright, but plaintiff did not respond.  (*Id*.)  Plaintiff then started to

8  turn towards Officer Fiechtner.  (*Id*.)  According to defendant Jones, plaintiff was then placed against

9  the wall in the hallway where she instructed him to calm down and advised him that he would be

10 pepper sprayed if he continued to resist.  (*Id*.)  Plaintiff threatened to sue the officers if he was pepper

11 sprayed, but the escort continued down the hallway.  (*Id*.)  Defendant Jones states that plaintiff then

12 attempted to resist again and that she administered a short burst of pepper spray to plaintiff's face.

13 (*Id*.)  When plaintiff refused to comply with another directive of defendant Jones, and continued to

14 resist, she administered another burst of pepper spray to plaintiff's face in order to gain compliance.

15 (*Id*. at 2-3.)  Plaintiff thereafter complied with officers' directives.  (*Id*. at 3.)

16         After plaintiff was pepper-sprayed, he was turned around and escorted backwards by officers

17 to pre-disciplinary housing.  (Dkt. No. 16 at 8; Dkt. No. 45 at 3.)  Plaintiff asserts that he was dragged

18 down the hallway and then up a flight of stairs backwards and that he sustained injuries to his ankle

19 during this process.  (Dkt. No. 16 at 8.)  Defendant Jones states that plaintiff was assisted up the steps

20 and placed in his cell, and that a jail health nurse was immediately summoned in order to

21 decontaminate plaintiff of the pepper spray.  (Dkt. No. 45 at 3.)  The jail health nurse decontaminated

22 plaintiff and cleared him to remain in general population.  (*See* Dkt. No. 44, Attachment D.)

23 According to defendant Jones, plaintiff had no visible injuries, nor did he complain of any injuries,

24 when officers left him in his cell.  (Dkt. No. 45 at 3.)

25
REPORT AND RECOMMENDATION
26 PAGE - 4

1    As a result of his behavior on December 10, 2004, plaintiff was infracted for resisting, for
2  refusing orders resulting in an emergency response, and for refusing placement. (Dkt. No. 46 at 2, and
3  Attachment C.) Plaintiff's disciplinary hearing was conducted on December 13, 2004, by defendant
4  Kintner. (*Id.*) Defendant Kintner found plaintiff guilty of refusing orders resulting in an emergency
5  response, apparently based upon plaintiff's own written statement. (*See* Dkt. No. 46 at 2, Attachment
6  B at 10-11, and Attachment C.) Defendant Kintner then found plaintiff guilty of the other charges and
7  imposed a sanction of ten days in disciplinary segregation and five days loss of good time. (Dkt. No.
8  46, Attachment C.) Plaintiff appealed the decision of defendant Kintner and, on December 14, 2004,
9  defendant Belt upheld the decision of defendant Kintner. (Dkt. No. 47 at 2.)
10   On December 16, 2004, plaintiff was finally seen again by Dr. Kersey. (Dkt. No. 16 at 11;
11  Dkt. No. 44 at 3 and Attachment C.) At that time, Dr. Kersey apparently diagnosed plaintiff with post
12  traumatic stress disorder and prescribed an additional medication for plaintiff to take along with the
13  Zoloft and Trazadone. (*Id.*) Defendant Nanson states that Dr. Kersey continued to see plaintiff
14  approximately monthly throughout the remainder of his incarceration at the RJC. (Dkt. No. 44 at 3.)

## DISCUSSION

Plaintiff alleges in his civil rights complaint that medical personnel at the KCCF and the RJC failed to provide adequate treatment for his mental health issues. Plaintiff also alleges that an officer at the RJC used excessive force against him. Finally, plaintiff alleges that he was denied due process in the context of a prison disciplinary proceeding. Plaintiff argues in his motion for summary judgment that he is entitled to judgment as a matter of law with respect to his inadequate medical care and excessive force claims.[1]

---

[1] While plaintiff asserts in the fact section of his summary judgment motion that he was denied his right to a fair disciplinary hearing by defendants Kintner and Belt, he does not argue in his motion that he is entitled to summary judgment with respect to that claim. This Court will therefore confine its discussion to the two claims clearly argued by plaintiff in his summary judgment motion.

REPORT AND RECOMMENDATION
PAGE - 5

Summary Judgment Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986). And, the court is required to draw all inferences in a light most favorable to the non-moving party. *Id*. at 248. Genuine disputes are those for which the evidence is such that a "reasonable jury could return a verdict for the nonmoving party." *Id*. Material facts are those which might affect the outcome of the suit under governing law. *Id*. Plaintiff argues, but fails to establish, that he is entitled to judgment as a matter of law with respect to his inadequate medical care and his excessive force claims.

Inadequate Medical Care

Plaintiff first argues in his motion for summary judgment that defendants violated his rights under the Eighth Amendment when they failed to provide adequate care for his mental health issues. Plaintiff contends that the jail health department was deliberately indifferent to his serious mental health needs and that defendants Judy Hobdy and Debbie Nanson, in their role as jail health supervisors, had a duty to ameliorate the routinely poor medical care.

The Eighth Amendment imposes a duty upon prison officials to provide humane conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). This duty includes ensuring that inmates receive adequate medical care. *Id*. Because plaintiff was a pretrial detainee at the time of the alleged harm, his claims arise under the Due Process Clause of the Fourteenth Amendment. *Carnell v. Grimm*, 74 F.3d 977, 979 (9th Cir. 1996). Eighth Amendment standards are, however, still applicable to his claims. *See Id*. In order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component. The Eighth Amendment

REPORT AND RECOMMENDATION
PAGE - 6

1  standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish
2  a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind.
3  *Farmer*, 511 U.S. at 834.

4  Plaintiff offers no evidence to support his contention that defendants Hobdy and Nanson
5  violated his right to adequate medical care. The record indicates that neither defendant Hobdy nor
6  defendant Nanson provided any direct care to plaintiff. As supervisors in the medical department,
7  their role was limited to responding to plaintiff's grievances and kites. The record indicates that
8  defendants Hobdy and Nanson were, in fact, responsive to plaintiff's concerns regarding his need for
9  follow-up psychiatric care as evidenced by the fact that they took steps to arrange psychiatric clinic
10 appointments for plaintiff in an efficient fashion upon receiving plaintiff's grievances. The record is
11 devoid of any evidence that either of these individuals was deliberately indifferent to plaintiff's need
12 for ongoing mental health care. Accordingly, plaintiff is not entitled to summary judgment with
13 respect to this claim.

14 <center>Excessive Force</center>

15 Plaintiff next argues in his motion for summary judgment that he is entitled to judgment as a
16 matter of law with respect to his excessive force claim. Plaintiff's excessive force claim arises out of
17 the actions of defendant Jones during the course of plaintiff's transport to pre-disciplinary housing on
18 December 10, 2004.

19 "[T]he Fourth Amendment sets the applicable constitutional limitations for considering claims
20 of excessive force during pretrial detention." *Gibson v. County of Washoe*, 290 F.3d 1175, 1197 (9th
21 Cir. 2002) (internal quotation marks omitted). Thus, plaintiff's claim of excessive force must be
22 evaluated under the Fourth Amendment's objective reasonableness standard. *Pierce v. Multnomah*
23 *County*, 76 F.3d 1032, 1043 (9th Cir. 1996). As the United States Supreme Court explained in
24 *Graham v. Connor*, 490 U.S. 386, 397 (1989) "the 'reasonableness' inquiry in an excessive force case

REPORT AND RECOMMENDATION
PAGE - 7

is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."

Plaintiff asserts that he became emotional while being transported to pre-disciplinary housing on December 10, 2004, because of the frustrations he was experiencing in obtaining proper medical care. He contends that he was handcuffed, that he had officers surrounding him, and that he did not pose a physical threat to anyone. Plaintiff further contends that defendant Jones nonetheless ordered officers to force plaintiff against the wall and that she then pepper sprayed plaintiff after he threatened to sue her for use of excessive force. Defendant Jones states in her declaration that she pepper sprayed plaintiff because he was resisting officers' attempts to move him to pre-disciplinary housing. Whether or not defendant Jones' actions can be deemed reasonable would appear to depend upon resolution of these disputed facts. Because there exists a genuine issue of fact as to whether defendant Jones' conduct was reasonable, summary judgment is not appropriate with respect to plaintiff's excessive force claim.

## CONCLUSION

For the foregoing reasons, this Court recommends that plaintiff's motion for summary judgment be denied. A proposed order accompanies this Report and Recommendation.

DATED this 7th day of September, 2005.

Monica J. Benton
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 8